### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

STEVEN F. LARSEN,

        Plaintiff,

Case No. 8.07-cv-00442-T-17-TBM

vs.

AIRTRAN AIRWAYS, INC.

        Defendant.

_____/


### ORDER ON MOTION TO DISMISS AND FOR STAY

        This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's First
Amended Complaint, filed on July 16, 2007 (Dkt. 24), and Plaintiff's Opposition Response
thereto filed on July 27, 2007 (Dkt. 28).  The following facts are accepted as true for the
purpose of resolving the pending motion.


### BACKGROUND AND PROCEDURAL HISTORY

        Plaintiff, Steven F. Larsen, filed a complaint (Dkt 1) against the Defendant,
AIRTRAN AIRWAYS, INC. on March 12, 2007.  On May 29, 2007, Plaintiff filed its First
Amended three-count Complaint (Dkt. 12) to this Court, individually for breach of an
employment contract and violation of the terms of the Employment Retirement Income
Security Act sec. 502 (a)(3). In its Complaint, Plaintiff asks the Court to clarify his rights as
a plan participant, to recover benefits due under the plan pursuant to the Employment
Retirement Income Security Act (ERISA), and to enter an injunction to forbid acts and
practices that violate the terms of the plan, enforce terms of the plan, to and for damages
caused by breach of the employment contract.

        On July 16, 2007, Defendant filed a Motion to Dismiss (Dkt 24) in response to

Plaintiff's First Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction, pursuant to 12 (b)(1) and (6) for Plaintiff's failure to state a claim, with an attached memorandum of law for the Court's consideration.

On July 20, 2007, Defendant filed a Motion for Stay (Dkt. 26) to which the Plaintiff responded (Dkt. 28).  Plaintiff also filed a Response to the Defendant's Motion to Dismiss (Dkt. 28).  This dispute here involves whether this Court has jurisdiction to entertain this case.

## FACTS

Plaintiff was an employee of AirTran Airways, Inc. (hereinafter Defendant) as a commercial airline pilot.  Defendant is a commercial airline, with operations in several Florida cities, including ticketing and flight operations in Sarasota County.  Plaintiff was a participant of an employee benefit plan within the meaning of the Employee Retirement Income Security Act.  Plaintiff is the beneficiary of a Collective Bargaining Agreement (herein after CBA) between Defendant and the National Pilots Association (Union).  When Plaintiff applied for the long-term disability benefits under the Plan, he was denied.

Plaintiff alleges that he attempted to appeal the denial using the grievance procedure contained in the CBA.  Plaintiff alleges that his effort to begin the process was to no avail. Plaintiff alleges that the Director of Flying failed to conduct the required meeting upon Plaintiff's request.  Thereafter, Plaintiff's counsel wrote again to the Director of Flying, demanding he conduct the stage one meeting as required by the CBA.  (Exhibit 1) And again, the Director of Flying failed to respond and to convene the meeting.

Plaintiff then notified the union of his appeal and sought the assistance of the union in pressing his grievance, but, Plaintiff alleges that the union failed to provide Plaintiff with fair representation. (Exhibit 2)   Instead, Plaintiff alleges that the union's legal counsel yelled and shouted at Plaintiff when he attempted to get them to represent his interests.  According to Plaintiff, the union never provided him with representation or any other assistance in pressing his claim.  Plaintiff alleges that the union only displays animosity towards the Plaintiffs and his claims.

Additionally, Plaintiff asserts that the language of the CBA itself forecloses any meaningful remedy as there is no provision for Plaintiff to individually convene the Adjustment Board.  It provides that the union can press Plaintiff's claim only after Defendant attempts to resolve the grievance with Plaintiff, which the Defendant herein failed to do. (Exhibit 3)

Thus, Plaintiff filed suit in an attempt to clarify his rights as a plan participant, to recover benefits due under the plan pursuant to ERISA, to enjoin acts and practices that violate the terms of the plan,  to enforce terms of the plan, and for damages caused by breach of the employment contract.

## STANDARD OF REVIEW

### *12(b)(1)*

Lack of subject matter jurisdiction 12(b)(1) may be raised at any time.  Indeed, even if the litigants do not identify a potential problem in that respect, it is the duty of the court at any level of the proceedings to address the issue sua sponte whenever it is perceived.  Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 132 n.1 (1995).

The district court must determine questions of subject matter jurisdiction first, before determining the merits of the case.  Taylor v. Appleton, 30 F.3d 1365, 1366 (11th Cir. 1994). Unlike a Rule 12(b)(6) dismissal, the court need not confine its evaluation to the facts of the pleadings, but may review or accept any evidence, such as affidavits, or it may hold an evidentiary hearing.  Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). When jurisdictional facts are too intertwined with the merits to permit the determination to be made independently, the court should either employ the standard applicable to a motion for summary judgement or leave the jurisdictional determination to trial.  Lawrence v. Dunbar, 919 F.2d 1525, 1528-1529 (11th Cir.1990).

Subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) can be challenged facially or factually. Lawrence v. Dunbar, 919 F.2d 1529.  "'Facial attacks' on the complaint 'require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of

subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" Id. at 1529. "On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion." Id. "'Factual attacks,' on the other hand, challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'" Id. This is an attack on the "trial court's jurisdiction-its very power to hear the case." Id. "[N]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating the merits of the jurisdictional claims." Id. When a factual attack on subject matter jurisdiction implicates an element of the cause of action, the proper course of action "is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." Id. In such instances, "the district court should apply a Rule 56 summary judgment standard when ruling on a motion to dismiss which asserts a factual attack on subject matter jurisdiction." Id. "This refusal to treat indirect attacks on the merits as Rule 12(b)(1) motions provides, moreover, a greater level of protection to the plaintiff who in truth is facing a challenge to the validity of his claim." Id. "A district court can still dismiss a federal claim for lack of subject matter jurisdiction whenever a decision on subject matter jurisdiction also implicates the substantive merits of the claim." Id. at n7. This is so "[w]here the plaintiff's claims are 'clearly immaterial, made solely for the purpose of obtaining jurisdiction or are wholly unsubstantiated and frivolous.'" Id.


*12(b)(6)*

Any defendant to a complaint, counterclaim, or cross-claim may move to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6). Under the Rule 12(b)(6), the party moving for dismissal has the burden of proving that no claim has been stated. To prevail, the movant must show "beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief." Fuller v. Johannessen, 76 F.3d 347, 349-250 (11th Cir. 1996) (quoting Conley). This language emphasizes the limited applicability of Rule 12(b)(6) as the predicate for a final

dismissal of the action, a disposition that courts generally disfavor because it summarily terminates cases on their merits.  United States v. Baxter Int'l, Inc., 345 F.3d 866, 881(11th Cir. 2003).  During this threshold review, "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Brandt v. Bassett, 69 F.3d 1539, 1550 (11th Cir. 1995).

For Rule 12(b)(6) purposes, the court must accept the plaintiff's factual allegations as true.  Pyles v. United Air Lines, Inc., 79 F.3d 1046, 1049 (11th Cir. 1996).  The court may draw all reasonable inferences in plaintiff's favor.  Fuller v. Johannessen, 76 F.3d 347, 349-350.  The court should construe a plaintiff's allegations liberally, because the rules require only general or "notice" pleading, rather than detailed fact pleading.  Liberal construction has its limits, for the pleading must at least set forth sufficient information for the court to determine whether some recognized legal theory exists on which relief could be accorded the pleader.  Otherwise, a motion under Rule 12(b)(6) will be granted.

In addition, "conclusory allegations and legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss".  Municipal Utils. Bd. V. Alabama Power Co., 925 F.2d 1390 (11th Cir. 1991).  While the facts must be accepted as alleged, this does not automatically extend to bald assertions, subjective characterizations, or legal conclusions.  The plaintiff is not required to include evidentiary detail, but must allege a factual predicate concrete enough to warrant further proceedings.


**DISCUSSION**

This matter raises issues pertaining to the Federal Railway Labor Act, 45 U.S.C. § 184 (hereinafter RLA), which specifically allocates adjudicatory power to an adjustment board.  The issue before this Court is whether (1) Plaintiff has exhausted all his remedies in pursuit of his grievances, and whether (2) an exhaustion of remedies is enough to invoke the exception to the RLA preemption rule; and (2) whether this Court has jurisdiction to hear cases involving the interpretation and resolution of CBA disputes.

*General Rule for Interpretation and Application of the CBA*

The cardinal rule is that, when an employee of an air carrier asserts claims that require the application or interpretation of a collective bargaining agreement "made and maintained" pursuant to the requirements of the Federal Railway Labor Act, 45 U.S.C. § 184, such claims are not subject to adjudication in the federal courts.  Rather, they are subject to the exclusive remedies provided in the RLA.  Id.  An action taken by a air carrier employer that is "arguably justified" by a collective bargaining agreement is also a  "minor dispute" and is subject to the exclusive jurisdiction of the board of adjustment.  Consol. Rail Corp. v. Ry. Labor Executives' Ass'n, 491 U.S. 299, 306-307 (1989).  Further, substantive statutory prohibitions against retaliation or discrimination and claims that require "application or interpretation of a collective bargaining agreement" are disputes that are subject to different forums for resolution.  Hawaiian Airlines v. Norris, 512 U.S. 254-255 (1994).  The former may be litigated in the judicial context, but claims that requires application or interpretation of any agreement are left exclusively under the minor dispute resolution procedures of the RLA.  Pyles v. United Air Lines, Inc., 79 F.3d 1046 (11th Cir. 1996).

*Jurisdiction of Plaintiff's claims*

Defendant asserts that Plaintiff's claim in the instant case is either explicitly or implicitly a claim that AirTran violated rights defined or dependent on the negotiated collective bargaining agreement (hereinafter CBA) between AirTran, and his union. Defendant highlights that Plaintiff purposefully deleted references to CBA in Count I and II in Plaintiff's First Amended Complaint.  Defendant argues that these amendments and deletions do not change the fact that the terms of plaintiff's disability plan are set forth in the CBA, as already alleged by the Plaintiff.  Defendant, thus, argues that Plaintiff's allegations, that AirTran failed to comply with the disability plan**,** is an assertion that AirTran violated his rights under the CBA.  Thus, because the interpretation and application of CBA is subject

to the exclusive adjustment under RLA procedures,  Defendant concludes that this Court does not have jurisdiction to adjudicate this case.

As to Count II, the Defendant argues that Plaintiff's reliance on the agreement (CBA) for its claim is detrimental to Plaintiff's claims.  Defendant asserts that any act by a covered rail or air carrier that is even arguably justified by the collective bargaining agreement, broadly defined to include the written agreement and the customs and practices surrounding the agreement, is a minor dispute, also subject to the exclusive adjustment under RLA procedures.  Consol. Rail Corp. 491 U.S. at 309-310 (1989).

Defendant concludes that since Plaintiff's claims rest entirely on his asserted right to a benefit negotiated between AirTran and his union in collective bargaining, this Court has no jurisdiction to adjudicate the claim.  Additionally, Defendant adds that Plaintiff's complaint failed to state a claim for which this Court can grant relief, and urges the Court to dismiss in deference to the adjustment procedures established by the parties as required by the RLA at 45 U.S.C. § 184.

*Plaintiff's Claims*

The Plaintiff here alleges that the provisions of the CBA fails to provide a defined basis for employees to pursue their grievances.  Plaintiff here also alleges that he has exhausted his remedies by attempting to pursue his grievance.  Under the circumstances in the instant case, Plaintiff asserts that a reasonable employee in Plaintiff's situation could reach no conclusion other than the fact that his employer repudiated the grievance procedure, and that the union's refusal to represent him and the chilling language in the CBA makes it clear that any attempt to press the claim under the CBA procedure would be futile.  Plaintiff also argues that the position taken by the union displays considerable animus toward Plaintiff.  Plaintiff further argues that, because the union selects half of the Board of Adjustment, combined with the fact that the union's legal counsel is predisposed against Plaintiff's position, the likelihood of a neutral arbitration in accordance with the CBA would be slim.  Under these harsh circumstances, Plaintiff argues that he has exhausted his remedies, and thus, this Court has jurisdiction.

*Major v. Minor Disputes*

As to Count II, this Court agrees with Defendant's argument that any allegations within the scope of the CBA is a minor dispute and subject to the exclusive adjustment under RLA procedures. <u>Consol. Rail Corp</u>. 491 U.S. at 309-310 (1989). The Plaintiff's entire claim here was premised on his allegation that he was entitled to pursue his grievances, pursuant to the CBA. The Court, thus, regards Plaintiff's claims to be within the scope of the RLA. <u>Consol. Rail Corp. v. Ry. Labor Executives' Ass'n</u>, 491 U.S. 299, (1989). Therefore, as Defendant has pointed out, the Court finds that Plaintiff's reliance on the agreement (CBA) for its claim may have been detrimental to Plaintiff's claims here because any act covered by rail or air carrier, that is even arguably justified by the collective bargaining agreement, broadly defined to include the written agreement and the customs and practices surrounding the agreement is a minor dispute, subject to the exclusive adjustment under RLA procedures. <u>Consol. Rail Corp</u>. 491 U.S. at 309-310 (1989).

*Exception for want of Federal Jurisdiction*

Although Plaintiff's claims may only amount to a minor dispute, there are exceptions to this and Plaintiff is correct to invoke the exception to the RLA preemption doctrine. The court in <u>Pyles</u> relied heavily on <u>Capraro v. UPS</u>, 993 F.2d 328, 334 (1993) to determine whether plaintiff there exhausted his remedies prior to filing suit in federal court. <u>Pyles v. United Air Lines, Inc.</u>, 79 F.3d 1049 (11th Cir. 1996). <u>Capraro</u> underscores various exceptions to RLA preemption, even where the claims involved would ordinarily be of the type suited for resolution by the statutorily mandated procedures. These exceptions are applied even when a plaintiff relies on the interpretation and application of the CBA. <u>Capraro v. UPS</u>, 993 F.2d 328. By relying on <u>Childs v. Pennsylvania Bhd. of Maintenance Way Employees</u>, 831 F.2d 429 (3d Cir.1987), and <u>Sisco v. Consolidated Rail Corp.</u>, 732 F.2d 1188 (3d Cir.1984), the court in <u>Capraro</u> delineated three exceptions to RLA preemption: "(1) when the employer *repudiates the private grievance* machinery; (2) when resort to administrative *remedies would be futile*; and (3) when the employer is joined in a DFR

[duty of fair representation] claim against the union." <u>Childs</u>, 831 F.2d at 437 (quoting Sisco, 732 F.2d at 1190). (emphasis added)  <u>Childs</u> also added a fourth exception closely related to the third: "where a breach of the DFR by the union causes the employee to lose his right to press his grievance before the Board." <u>Id</u>. at 438-39.  (emphasis added).

In the instant case, this Court finds that Plaintiff's allegations fall into several of the exceptions as defined by the courts.  As to the first exception as defined *in supra*, this Court finds that the Defendant here repudiated Plaintiff's grievance machinery. Defendant in the instant case argues that Plaintiff failed to exhaust his remedies before he filed suit in this Court.  Therefore, pursuant to <u>Pyles</u>, Defendant argues that this Court does not have jurisdiction.  <u>Id</u>.  This Court however finds that the facts in the  instant case is distinguishable from <u>Pyles</u>.  <u>Id</u>.  In <u>Pyles v. United Air Lines, Inc.</u>, 79 F.3d 1046 (11th Cir. 1996), the court ruled that any complainant who seeks to pursue their grievances pursuant to RLA should first attempt to pursue their grievances before a system board of adjustment individually (or with counsel) and without any union assistance.  The Plaintiff in <u>Pyles</u> however, neither alleged that he exhausted his administrative remedies, nor took his grievance to the system board individually.  <u>Id</u>.  Unlike the Appellant in <u>Pyles</u>, Plaintiff in the instant case first attempted to pursue his administrative remedies.  <u>Id</u>.  When Plaintiff's disability insurance claim was denied by the plan administrator, Plaintiff initiated the procedure called for in the CBA grievance procedure by writing the Director of Flying and requested a meeting.  (Dkt. 12 pp. 2)  However, the director failed to respond.  Thereafter, the Plaintiff's counsel wrote a letter to the director demanding a meeting to initiate a grievance procedure.  (Dkt. 12 pp. 2) Even then, the director failed to respond to either the Plaintiff or his counsel.  Here, this Court agrees with Plaintiff that the Director's failure to convene such meeting cannot be said to be inadvertent in the fact of two written requests.  The Director's failure to respond or grant a meeting, after Plaintiff's multiple attempts to initiate a grievance procedure, can be taken to be a  repudiation of the grievance procedure by the employer.

### *Union's refusal of Plaintiff's claims*

Additionally, although Plaintiff's claims rest entirely on his asserted right to a benefit

under CBA, another exception applies in the instant case; namely when resort to administrative remedies would be futile or where a breach of the DFR by the union causes the employee to lose his right to press his grievance before the Board.  Childs v. Pennsylvania Bhd. of Maintenance Way Employees, 831 F.2d 429, 438-439.

The test for futility however, cannot be simply whether the submitted claim has a chance of success.  Capraro v. UPS, 993 F.2d 336.  "An employee whose substantive claims are clearly foreclosed by the language of the collective bargaining agreement might argue that submission of his claim to the Adjustment Board would be futile; yet clearly, this is not the sort of futility that would, in itself, warrant access to a judicial forum".  Id.  In Capraro, the CBA could have been read to deny a discharged probationary employee access to the grievance and arbitration process.  Id.  Nevertheless, [the court in Capraro concluded] " that the possibility that a contractual provision might be used to deny a [plaintiff ] access to the congressionally mandated process is insufficient to qualify [any plaintiff] for an exception to the general rule barring RLA-preempted suits from the courts".  Id.

As the plaintiff in Capraro alleged that his claims would be futile because of the language of the CBA, similarly, the Plaintiff in the instant case alleges that the provisions of the CBA fails to provide a defined basis for employees to pursue their grievances.  Id. However, the facts and circumstances in the instant case are distinguishable.  Here, pursuant to the CBA, Plaintiff notified the union of his grievance in writing after having failed to initiate a meeting with the Director of Flying.  (Dkt. 12).  Plaintiff also solicited help from the union to further press his grievance by speaking to the union's legal counsel by telephone.  (Dkt. 12).   However, the union failed to respond to Plaintiff's written notice. Thereafter, when Plaintiff finally had the opportunity to speak  to the lawyer, Plaintiff was subjected to verbal abuse and yelling.  The lawyer stated that Plaintiff did not have a case. (Dkt. 12).   Although RLA reflects a clear decision by Congress that minor disputes should be arbitrated, not litigated, the RLA also reflects a strong congressional interest in seeing that employees, such as the Plaintiff in the instant case, are not left remediless and without a forum to present their grievances.  Id.  After having considered the circumstances of the Plaintiff, the Court finds Plaintiff's grievance pursuits hereinafter to be futile.  The aggressive and controversial tone

in the Union's letter, to the Board of Adjustment (Dkt. 26-2) also fosters animosity and is prejudicial to the Plaintiff, even if the Board chooses to grant a meeting to attend to his grievances.

The court in <u>Capraro</u> held that in those rare instances where meaningful arbitration is rendered impossible by predisposition or prejudice, a court may allow an employee access to a court because he or she would otherwise be left without a meaningful remedy.  <u>Id</u>.  This Court finds that the facts and circumstances in the instant case is the type of scenario that Congress foresaw.  Here, the Court can only conclude that the Board hearing will be of no avail to Plaintiff.  In addition, it is the CBA, which gives the union the sole power to convene the subsequent steps and to convene the Board of Adjustment.  Although the contract provision does not preclude Plaintiff's statutory rights to press his grievance, the Court agrees that in such circumstances when the union fails to support one's  legitimate grievances, it may create a chilling effect on employees that are left unattended.  Here, the Plaintiff's rights cannot be nullified merely by agreement between AirTran and the union.  Plaintiff's rights are statutory rights, which he may exercise independently or authorize the union to exercise in his behalf.  Therefore, since the Adjustment Board refused to entertain Plaintiff's claim and the union refused to pursue his claims in his behalf, Plaintiff is entitled to a judicial forum.  Even if the Court issues an order compelling arbitration,  any proceeding thereafter may be futile.  Thus, under these facts, and in the interest of justice, invoking the exception to the RLA preemption doctrine is necessary.  When the board or the union fails or refuses to assist a Plaintiff in pursuing a legitimate set of grievance claims, a court may,  in the interest of justice invoke an applicable exception to the RLA at 45 U.S.C. § 184, and intervene for a proper resolution.   <u>Capraro v. UPS</u>, 993 F.2d 328.  Such an order would also serve the competing policies of ensuring that employees are not left remediless, and minor disputes are resolved through arbitration rather than litigation.  <u>Id</u>. at 337.

After having reviewed and considered the all of Plaintiff's allegations, evidence and arguments, this Court finds that the Plaintiff has sufficiently alleged a basis of subject matter jurisdiction, as this Court assumes that all the  allegations in the complaint are true for the

purposes of this motion.  The Plaintiff would not have had the benefit of this Judicial forum for purposes of adjudicating this case if it had not been for Plaintiff's demonstration that all of his remedies had been exhausted.  Because Plaintiff raised concerns of prejudice and unfairness that are material enough to invoke the exception to the RLA preemption rule, this Court finds that Plaintiff has alleged a sufficient basis for subject matter jurisdiction.

Additionally, this Court also denies Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12 (b)(6) because Defendant failed to prove that no claim has been stated.  Here, Plaintiff has sufficiently alleged his grievances pursuant to the CBA.  In addition, Plaintiff has demonstrated to this Court that his remedies were exhausted after multiple attempts to pursue his grievances.  Since Defendant here failed to show beyond doubt that the Plaintiff can prove no set of facts in support of his claim that would entitle him to relief, this Court denies Defendant's motion.  Further, the Court is not ready at this juncture to summarily terminate a case on its merits when Plaintiff has sufficiently alleged a basis for his claims. Brandt v. Basset, 69 F.3d 1550.

Finally, as to Defendant's Motion to Stay (Dkt. 26), in light of the ruling on the motion to dismiss the Court finds Defendant's motion to be without merit.  Accordingly, it is:

**ORDERED** that Defendant's Motion to Dismiss  (Dkt. 24)  and Defendant's Motion to Stay (Dkt. 26) be **DENIED**.

**DONE AND ORDERED** in Chambers, in Tampa, Florida on this 10th day of August, 2007.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

_____

cc: All Parties and Counsel of Record